**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTIAN LIM,

Plaintiff,

- v -

ARTICULATE.AI TECHNOLOGIES INC. d/b/a ARKLEX.AI, ZHOU YU, and ARBIT CHEN,

Defendants.

Civil Action No.: 1:26-cv-7418

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Christian Lim ("Lim"), by and through his undersigned attorneys, brings this Complaint against Defendants Articulate.AI Technologies Inc. d/b/a Arklex.AI ("Arklex"), Zhou Yu ("Yu"), and Arbit Chen ("Chen"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq., as well as breach of contract.

2. Arklex hired Lim in May 2025 as its VP of Platform to lead its engineering team, agreeing in writing that his $170,000 base salary would increase to $220,000 per year if Arklex raised $2 million in an equity financing.

3. Lim disclosed his disabilities — schizophrenia disorder, obsessive type — to both of Arklex's founders within weeks of starting work.

4. After Lim suffered a panic attack caused by workplace stress in or about late September or early October 2025, he told Arklex's Chief Technology Officer that workplace

stress exacerbated his medical conditions and asked for modest accommodations, including changes to Arklex's work review process; Arklex ignored his requests.

5. On October 29, 2025, Arklex announced that it had secured the funding that triggered Lim's contractual raise, and two days later — approximately one month after his accommodation requests — Arklex fired him, telling him he was not "a good fit with the company culture."

**JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS**

6. The Court has original jurisdiction over Lim's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

7. The Court has supplemental jurisdiction over Lim's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9. All conditions precedent to filing the instant action have been fulfilled. On or about November 18, 2025, Lim submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about June 3, 2026, the EEOC issued Lim a Notice of Right to Sue, and this action is being brought within 90 days of Lim's receipt of the Notice of Right to Sue.

10. Within 10 days of the commencement of this action, Lim will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law

Department, Office of the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

**PARTIES**

11. Plaintiff Lim is a resident of the State of New York and former VP of Platform of Arklex.

12. At all relevant times, Lim was an "employee" of Defendants under all relevant statutes.

13. Arklex is a Delaware corporation that operates and markets under the name Arklex.AI and is permitted to do business in New York.

14. Upon information and belief, at all relevant times, Arklex — together with Rippling PEO 1, Inc., the professional employer organization through which Arklex co-employed its workforce, and any affiliated or integrated entities — employed at least 15 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

15. Arklex conducted business at 33 West 60th Street, New York, New York 10023, where it employed Lim.

16. Defendant Yu was at all relevant times employed by Arklex as its Chief Executive Officer, a company she co-founded in 2023.

17. Yu had the ability to affect the terms and conditions of Lim's employment and did so by, among other things, overseeing his work, supervising his role as VP of Platform, and terminating his employment.

18. Upon information and belief, Yu resides in New York.

19. Defendant Chen was at all relevant times employed by Arklex as its Chief Technology Officer, a company he co-founded in 2023.

20. Chen had the ability to affect the terms and conditions of Lim's employment and did so by, among other things, assigning his work, overseeing his work, evaluating his performance and providing feedback, and terminating his employment.

21. Upon information and belief, Chen resides in California and worked for Arklex remotely from California.

22. At all relevant times, Defendants were Lim's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

### I. Arklex Recruits Lim to Build Its Engineering Platform

23. Arklex is an artificial intelligence startup, founded in 2023 by Yu, that builds platforms to test and evaluate other companies' AI agents.

24. On or about May 5, 2025, Lim accepted Arklex's written offer of employment (the "Offer Letter") to serve as Arklex's VP of Platform, reporting to Yu.

25. In or about May 2025, Lim began working for Arklex out of its New York City office at 33 West 60th Street.

26. As VP of Platform, Lim was responsible for the engineering of Arklex's platform and for managing Arklex's engineers.

27. The Offer Letter provided for a base salary of $170,000 per year.

28. The Offer Letter further provided: "In the event the Company raises $2 million in an Equity Financing, your base salary will increase to $220,000 per year."

29. The Offer Letter defined an "Equity Financing" as "a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Preferred Stock at a fixed valuation."

30. The Offer Letter also provided that, subject to approval by Arklex's Board of Directors, Arklex would sell and issue Lim 57,333 shares of Arklex common stock, vesting over four years with a 25% cliff after his first year of service.

## II. Lim Discloses His Disabilities to Both of Arklex's Founders

31. Lim has diagnosed disabilities, including schizophrenia disorder, obsessive type — a condition combining symptoms of schizophrenia and obsessive-compulsive disorder.

32. When active, Lim's conditions substantially limit one or more major life activities, including thinking, concentrating, sleeping, interacting with others, regulating his emotions and responses to stress, and neurological functions.

33. Lim's conditions previously required him to take a medical leave from his studies at the Massachusetts Institute of Technology and to take prescription medication.

34. Yu has known Lim since before his employment with Arklex and, through their longstanding friendship, knew of Lim's medical conditions.

35. On or about June 14, 2025, Lim met Chen for coffee in Palo Alto, California.

36. During that meeting, Lim told Chen that he had been diagnosed with schizophrenia disorder, obsessive type, which he described to Chen caused him panic attacks, hallucinations, difficulty sleeping, and obsessive behaviors.

37. Lim told Chen that his conditions could impact him during stressful periods and asked for understanding.

## III. Lim Performs His Job Successfully

38. Lim performed his job duties successfully throughout his employment.

39. Lim was among the top contributors of code to Arklex's platform, as publicly reflected in the contributor statistics for Arklex's GitHub repositories.

40. In or around September 2025, on a Zoom call, Chen told Lim, in words or substance, that work Lim completed on his own was instrumental to Arklex's fundraising efforts with venture capital investors.

41. Arklex never placed Lim on a performance improvement plan, never issued him any written discipline, and never told him that his job was in jeopardy.

## IV. Lim Suffers a Panic Attack, Requests Accommodations, and Is Ignored

42. In or about late September or early October 2025, Lim suffered a panic attack caused by workplace stress.

43. The panic attack was precipitated in part by Arklex's lack of any regular process for reviewing Lim's completed work, which left his work sitting unreviewed as deadlines approached.

44. At approximately midnight on the night of the panic attack, Lim sent a Slack message to Chen and Lucy Lu ("Lu"), informing them that he had just experienced a panic attack episode.

45. In that message, Lim wrote, in words or substance, that he would try to finish his work as soon as possible, that he might need support and/or medical attention, and that going forward he might need reasonable accommodations for his mental health.

46. No one in Arklex's management responded to Lim's message.

47. Within approximately one week of the message, Lim spoke with Lu about the panic attack.

48. Lim told Lu that the episode had been precipitated by the absence of a regular review process and asked to establish such a process so that his medical conditions would not be aggravated in the future.

49. Lu responded that Lim was taking the internal deadline too seriously.

50. That same week, Lim also spoke with Chen about the panic attack.

51. Lim told Chen that workplace stress exacerbated his medical conditions.

52. Lim asked Chen to modify Arklex's work review process to alleviate that stress.

53. Lim also asked Chen whether, if his concerns arose again, he could message Chen to request to take things easier or to seek a medical accommodation.

54. Chen responded that Arklex could look into how to help Lim on a "case by case basis."

55. Arklex never implemented any accommodation, never modified its review process in response to Lim's requests, and never followed up with Lim about his requests.

56. Neither Yu nor Chen ever raised Lim's medical conditions, his panic attack, or his accommodation requests with him again before his termination.

## V. <u>**Arklex Secures Its Funding — and Fires Lim Two Days After Announcing It**</u>

57. Upon information and belief, on or about October 21, 2025, Chen and Yu decided to terminate Lim's employment.

58. Upon information and belief, Chen and Yu deliberately delayed carrying out the termination until Arklex had finished securing a new round of funding.

59. On October 29, 2025, Arklex announced at a company-wide meeting that it had secured a new round of funding.

60. Upon information and belief, the new round of funding was an Equity Financing of at least $2 million that would close in 2025 within the meaning of the Offer Letter.

61. Under the Offer Letter, the funding triggered an increase in Lim's base salary to $220,000 per year.

62. Arklex never paid Lim at the increased salary rate.

63. Two days after the funding announcement, on October 31, 2025, Chen and Yu — joined by Arklex's Growth Lead, Angela Sharma — met with Lim and terminated his employment, effective November 1, 2025.

64. The termination came approximately one month after Lim's accommodation requests.

65. At the termination meeting, Arklex told Lim that he was being terminated because he was not "a good fit with the company culture."

66. Upon information and belief, Chen read from a prepared termination script stating that the decision was ultimately about fit.

67. Arklex gave Lim no specific details supporting its stated reason and had given him no prior warning that his job was at risk.

68. During the termination meeting, Lim reminded Chen and Yu that his medical conditions impacted his behavior and his responses to stress.

69. Chen and Yu disregarded Lim's statement and continued discussing the termination.

70. Because Arklex terminated Lim's employment approximately six months before his first-anniversary vesting cliff, Lim vested in none of his 57,333 shares.

71. As a direct result of Defendants' conduct, Lim lost wages and benefits, including the increased salary he was contractually owed, and the value of his equity in Arklex.

72. Defendants' conduct caused Lim significant emotional distress, including sleeplessness, emotional volatility, anxiety, and racing thoughts, from which he continues to suffer.

## FIRST CAUSE OF ACTION
**(Discrimination in Violation of the ADA)**
***Against Defendant Arklex***

73. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

74. Defendant Arklex discriminated against Lim on the basis of his disability and request for a reasonable accommodation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. Lim has suffered disparate treatment as a result of Arklex's conduct.

75. Lim is a qualified individual with a disability under the ADA and was perceived by Arklex as being disabled, and he is therefore a member of a protected class.

76. Lim was qualified to work as a VP of Platform for Arklex and satisfactorily performed the duties required by that position.

77. Arklex subjected Lim to adverse employment actions because of his disability.

78. As a direct and proximate result of Arklex's unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

79. Arklex's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

**SECOND CAUSE OF ACTION**
**(Failure to Accommodate in Violation of the ADA)**
***Against Defendant Arklex***

80. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

81. Lim is a qualified individual with a disability under the ADA and was perceived by Arklex as being disabled, and is therefore a member of a protected class.

82. Arklex was aware of Lim's disability and its related limitations.

83. Lim requested reasonable accommodations for his disability.

84. Arklex failed to provide a reasonable accommodation for Lim's disability and refused to participate in a good faith interactive process to determine if there was an accommodation that would accommodate Lim's disability.

85. Had Arklex provided Lim with a reasonable accommodation, Lim could have performed the essential functions of his job.

86. Accordingly, Arklex discriminated against Lim by virtue of failing to accommodate his known disability and failing to engage in an interactive process in violation of the ADA.

87. As a direct and proximate result of Arklex's unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

88. Arklex's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of the ADA)**
***Against Defendant Arklex***

89. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

90. As set forth in detail above, Lim engaged in activity protected under the ADA.

91. Arklex was aware that Lim opposed unlawful conduct and/or asserted his rights under the ADA.

92. Arklex, unlawfully and without cause, retaliated against Lim as a direct result of Lim asserting his rights under the ADA as someone with a disability or perceived disability, and Lim suffered materially adverse employment actions as a result.

93. As a direct and proximate result of Arklex's unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

94. Arklex's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

95. Accordingly, Arklex retaliated against Lim in violation of his statutory rights as guaranteed by the ADA.

**FOURTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
***Against All Defendants***

96. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

97. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Lim because he was a member of a protected class.

98. Lim is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

99. Lim was qualified to work as a VP of Platform for Defendants and he satisfactorily performed the duties required by the position he held with Defendants.

100. As set forth in detail above, Defendants discriminated against Lim and subjected him to adverse employment actions.

101. As a direct and proximate result of Defendants' unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

102. Accordingly, Defendants discriminated against Lim because of his disability, in violation of his statutory rights as guaranteed by the NYSHRL.

103. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

## FIFTH CAUSE OF ACTION
**(Failure to Accommodate in Violation of the NYSHRL)**
***Against All Defendants***

104. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

105. Lim is a qualified individual with a disability under the NYSHRL and was perceived by Defendants as being disabled, and he is therefore a member of a protected class.

106. Defendants were aware and on notice of Lim's disability and its symptoms.

107. Lim requested reasonable accommodations for his disability.

108. Defendants failed to provide a reasonable accommodation for Lim's disability and refused to participate in a good faith interactive process to determine if there was an accommodation that would accommodate Lim's disability.

109. Had Defendants provided Lim with a reasonable accommodation, Lim could have performed the essential functions of his job.

110. As a direct and proximate result of Defendants' unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

111. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

112. Accordingly, Defendants discriminated against Lim by virtue of failing to accommodate his known disability and failing to engage in an interactive process in violation of the NYSHRL.

**SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYSHRL)**
***Against All Defendants***

113. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

114. As set forth in detail above, Lim engaged in activity protected under the NYSHRL.

115. Defendants retaliated by subjecting Lim to discrimination and adverse employment actions because of his protected activity in violation of Lim's statutory rights.

116. Defendants were aware that Lim opposed unlawful conduct and asserted his rights under the NYSHRL.

117. Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

118. Accordingly, Defendants retaliated against Lim in violation of his statutory rights as guaranteed by the NYSHRL.

**SEVENTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
***Against All Defendants***

119. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

120. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Lim because he was a member of a protected class.

121. Lim is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

122. As set forth in detail above, Defendants discriminated against Lim in the terms and conditions of his employment by treating Lim less well than his similarly situated coworkers outside his protected class.

123. The discriminatory conduct directed at Lim was motivated, in whole or in part, by Lim's disability.

124. As a direct and proximate result of Defendants' unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

125. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

126. Accordingly, Defendants discriminated against Lim because of his disability, in violation of his statutory rights as guaranteed by the NYCHRL.

**EIGHTH CAUSE OF ACTION**
**(Failure to Accommodate in Violation of the NYCHRL)**
***Against All Defendants***

127. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

128. Lim is a qualified individual with a disability under the NYCHRL and was perceived by Defendants as being disabled, and he is therefore a member of a protected class.

129. Defendants were aware and on notice of Lim's disability and its symptoms.

130. Lim requested reasonable accommodations for his disability.

131. Defendants failed to provide a reasonable accommodation for Lim's disability and refused to participate in a good faith interactive process to determine if there was an accommodation that would accommodate Lim's disability.

132. Had Defendants provided Lim with a reasonable accommodation, Lim could have performed the essential functions of his job.

133. As a direct and proximate result of Defendants' unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

134. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

135. Accordingly, Defendants discriminated against Lim by failing to accommodate his known disability under the NYCHRL.

**NINTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**
***Against All Defendants***

136. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

137. As set forth in detail above, Lim engaged in activity protected under the NYCHRL.

138. Defendants retaliated against Lim by treating him less well than similarly situated employees and subjecting him to discrimination and adverse employment actions because of his protected activity in violation of the NYCHRL.

139. Defendants were aware that Lim opposed unlawful conduct and/or asserted his rights under the NYCHRL.

140. As a result of this protected activity, Defendants retaliated against Lim by engaging in conduct that was reasonably likely to deter an individual from engaging in such protected activity, in violation of the NYCHRL.

141. As a direct and proximate result of Defendants' unlawful employment practices, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

142. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

143. Accordingly, Defendants retaliated against Lim in violation of his statutory rights as guaranteed by the NYCHRL.

**TENTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the NYSHRL and NYCHRL)**
***Against Defendants Yu and Chen***

144. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

145. Defendants Yu and Chen aided, abetted, incited, compelled, or coerced Arklex's unlawful conduct, including discrimination, failure to provide a reasonable accommodation, and retaliation, against Lim by actually participating in the conduct giving rise to the claims here.

146. Yu and Chen were aware of their roles in the unlawful activity and knowingly assisted Arklex in its violations of the NYSHRL and NYCHRL.

147. As a direct and proximate result of Yu's and Chen's conduct, Lim has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

148. Yu's and Chen's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Lim, entitling him to punitive damages.

**ELEVENTH CAUSE OF ACTION**
**(Breach of Contract)**
***Against Defendant Arklex***

149. Lim repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

150. Lim and Arklex entered into a valid and binding contract, dated May 5, 2025, under which Arklex agreed to increase Lim's base salary to $220,000 per year in the event Arklex raised $2 million in an Equity Financing.

151. Lim performed his obligations under the contract.

152. Upon information and belief, in or about October 2025, Arklex raised at least $2 million in an Equity Financing within the meaning of the contract.

153. Arklex breached the contract by failing to pay Lim at the increased $220,000 salary rate from the date of the Equity Financing through the end of his employment.

154. As a direct and proximate result of Arklex's breach, Lim has been damaged in an amount to be determined at trial.

**RELIEF**

Plaintiff Christian Lim demands judgment in his favor and against Defendants Articulate.AI Technologies Inc. d/b/a Arklex.AI, Zhou Yu, and Arbit Chen as follows:

A. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Lim for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

B. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Lim for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

C. An award of punitive damages, in an amount to be determined at trial;

D. Prejudgment interest on all amounts due;

E. An award of Lim's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Christian Lim demands a trial by jury on all issues so triable of right.

Dated: August 31, 2026
New York, New York

**RISSMILLER PLLC**

By: */s/ Jazly Liriano*
Jazly Liriano
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 248-7811
jliriano@rissmiller.com

*Attorneys for Plaintiff Christian Lim*